IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:10-CR-169 |
| | ) | |
| | ) | (PHILLIPS/SHIRLEY) |
| JEFFREY WHALEY, and | ) | |
| JERRY D. KERLEY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the following pretrial motions:

(1) Defendant Kerley's Motion for Severance of Defendants [Doc. 30], filed on April 12, 2011;

(2) Defendant Kerley's Motion for Hearing to Determine Existence of Conspiracy [Doc. 37], filed April 13, 2011;

(3) Defendant Kerley's Motion for Jury Determination of Forfeiture Nexus [Doc. 39], filed April 13, 2011;

(4) The Government's Sealed Motion to Seal Exhibits to Government's Response to Defendant Kerley's Motion for Severance of Defendants (R. 30) [Doc. 57], filed on June 20, 2011;

(5) Defendant Whaley's Motion to Adopt Motions of Co-defendant [Doc. 52], filed June 3, 2011;

(6) Defendant Whaley's Motion to Join Motion to Sever [Doc. 53], filed on June 4, 2011; and

1

(7)  The United States Motion to Correct Clerical Errors [Doc. 68], filed August 11, 2011. [1]

The parties appeared before the undersigned for a hearing on the motions on July 14, 2011. Assistant United States Attorneys F.M. Hamilton, III, and Zachary C. Bolitho appeared on behalf of the Government.  Attorneys W. Thomas Dillard and Wade V. Davies represented Defendant Kerley, and Attorney Tracy Jackson Smith represented Defendant Whaley.  Both Defendants were also present.  After hearing the arguments of the parties, the Court took the motions under advisement.  The Court now addresses each of these motions in turn.

## I.  ADOPTION OF CODEFENDANT'S MOTIONS [Docs. 52 and 53]

Defendant Whaley moves [Docs. 52 and 53] the Court to allow him to join in Defendant Kerley's pretrial motions [Docs. 30, 37, 39, 46, and 48].  In support of this request, he contends that permitting him to join in his Codefendant's pretrial motions would avoid unnecessary duplication of pleadings and promote judicial economy.  Specifically, with regard to the Motion for Severance of Defendants, he asserts that he also seeks a separate trial from that of Defendant Kerley because the admission of his unredacted statements, in which he implicates Defendant Kerley, are necessary to his defense.  Although opposing the underlying motions, the Government raises no objection to Defendant Whaley's joining in Defendant Kerley's motions.

The Court finds Defendant Whaley's motions to join in Defendant Kerley's motions to be well-taken, and they [**Docs. 52 and 53**] are **GRANTED**.  The motions also apply to Defendant Whaley and joinder in the filed motions prevents duplication of documents and unnecessary

---

[1]Defendant Kerley's Motion to Dismiss Counts 1 Through 17 [Doc. 46] and Motion to Dismiss Count 20 [Doc. 48] will be addressed separately in a report and recommendation.

2

complication of the record. Despite his joining in both the motions and memoranda of Defendant Kerley, Defendant Whaley is responsible for informing the Court about any specific or different way in which the motions apply to him.

## II. CORRECTION OF FOURTH SUPERSEDING INDICTMENT [Doc. 68]

Pursuant to Rule 36 of the Federal Rules of Criminal Procedure, the Government asks [Doc. 68] the Court to correct clerical errors in the Fourth Superseding Indictment [Doc. 61]. It requests that the seven overt acts alleged in paragraph 71 of Count 1, which charges a conspiracy, be numbered (1) through (7), rather than (2) through (8) as they presently appear. The Government also asks that the date of "March 9, 2005," in the first sentence of paragraph 85 be changed to "March 9, 2006," so that the sentence reads:

> From on or about October 27, 2005 through on or about March 9, 2006, the defendants, JEFFREY WHALEY and JERRY D. KERLEY, aided and abetted by, and aiding and abetting, each other and others known and unknown to the grand jury, did knowingly, willfully, and with the intent to defraud, execute and participate, and attempt to execute and participate, in a scheme and artifice to defraud a financial institution, namely SunTrust Bank, whose deposits were then insured by the Federal Deposit Insurance Corporation, and to obtain money, funds and credits under the custody and control of SunTrust Bank, by means of materially false and fraudulent pretenses, representations, and omissions.

In support of this change, the Government states that it is clear from the context that the March date was intended to fall after the October date; that the final execution of the alleged bank fraud scheme is alleged in Count 17, paragraph 87, to have occurred on March 8, 2006; and that all the events alleged in the indictment occurred in 2005 or 2006.

At the July 14 motion hearing, AUSA Hamilton stated that the Government intended to file

3

a Rule 36 motion to revise the Indictment due to clerical errors. At that time, neither Defendant took

a position on this request. After the filing of the motion on August 11, 2011, the Defendants have

likewise raised no objection to the proposed corrections.

Rule 36 provides that "[a]fter giving any notice it considers appropriate, the court may at any

time correct a clerical error in a judgment, order, or other part of the record, or correct an error in

the record arising from oversight or omission." Fed. R. Crim. P. 36. The Court finds that the

corrections requested by the Government are corrections of clerical errors and do not change the

charges found by the grand jury. Additionally, the Government's request to correct these errors is

unopposed. Accoringly, the United States Motion to Correct Clerical Errors [**Doc. 68**] is

**GRANTED**. The Government is **DIRECTED** to provide a corrected copy of the Fourth

Superseding Indictment to the District Judge and the Defendants by the deadline established for

filing special requests for jury instructions.[2]


### III. SEVERANCE [Docs. 30 and 53]

Pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, the Defendants ask

[Docs. 30 and 53] that they be severed for separate trials. Defendant Kerley contends that a joint

trial is prejudicial because the introduction of Defendant Whaley's statement would violate his rights

under the Confrontation Clause, if Defendant Whaley chooses not to testify. The Government

responds that severance is unwarranted because Defendant Kerley's confrontation concerns can be

alleviated by redacting Defendant Whaley's statement to remove any references to Defendant

Kerley. At the July 14 motion hearing, counsel for Defendant Kerley agreed to the redacted version

---

[2]This deadline is presently set for September 23, 2011. [See Doc. 51]

of Defendant Whaley's statement [Exh. 1].

Defendant Whaley asks that he be severed for trial so that he can introduce the unredacted version of his statement, which he argues is exculpatory as to him. He argues that if his statement is introduced through the FBI agent who conducted the interview, he would be allowed to introduce the complete statement pursuant to the rule of completeness from Federal Rule of Evidence 106. The Government argues that Defendant Whaley cannot introduce his own statement in either a joint or a separate trial because it is hearsay. It contends that in a joint trial, Defendant Kerley's confrontation rights trump the rule of completeness, unless the statement is distorted by the redactions or is otherwise exculpatory. The Government asserts that Defendant Whaley's statement is not distorted by the proposed redactions and is inculpatory, rather than exculpatory, to Whaley.

*(A) Sealed Exhibits*

As an initial matter, the Court notes that the Government moved to seal [Doc. 57] exhibits relevant to its response to the Defendant's severance motion. These exhibits are an unredacted version of an FBI summary of an interview with Defendant Whaley [Doc. 58, Exh. 1] and copy of the same summary with proposed redactions [Doc. 58, Exh. 2]. In its request to seal these exhibits, the Government states that they are relevant to an ongoing investigation. In his reply brief [Doc. 62], Defendant Kerley suggested an additional redaction to be made to the Government's proposed redaction [Doc. 58, Exh. 2]

At the July 14 hearing, the Defendants had no objection to the sealing of the exhibits provided with the Government's response, and the Court initially granted the Government's request to seal them at the beginning of the motion hearing. During the subsequent argument on the

severance issue, AUSA Bolitho stated that it was no longer necessary to seal the exhibits. He also stated that that the Government agreed to make the redaction requested by Defendant Kerley in his reply. At the hearing, the Government introduced two exhibits: Exhibit 1 to the hearing is Defendant Whaley's statement with the additional redaction requested by Defendant Kerley and Exhibit 2 is the redacted version initially proposed by the Government (i.e., identical to Exhibit 2 to the Government's response [Doc. 58]).

The Court returned to the issue of the sealing of the exhibits at the conclusion of the motion hearing. Defendant Whaley did not object to the unsealing of the exhibits. Defendant Kerley took no position on the issue of whether the exhibits should remain sealed. After a brief discussion, the Court ordered that Exhibit 1 (the unredacted version of the summary) to the Government's response [Doc. 58] remain sealed and Exhibit 1 to the hearing (the redacted version that includes the redaction requested by Defendant Kerley) and both Exhibits 2 (the Government's first proposed redacted version) be unsealed. Accordingly, the Government's Motion to Seal Exhibits to Government's Response to Defendant Kerley's Motion for Severance of Defendants (R. 30) [**Doc. 57**] is **GRANTED in part** in that the attached Exhibit 1 is **SEALED** and **DENIED in part** in that the attached Exhibit 2 is **UNSEALED**. Both exhibits to the July 14 motion hearing also remain unsealed.

### *(B) Background*

The Defendants are charged in a Fourth Superseding Indictment [Doc. 61] with conspiracy to commit wire fraud and bank fraud (Count 1), eight counts of wire fraud (Counts 2-9), eight counts of bank fraud (Counts 10-17), and one count of money laundering (Count 20).

Defendant Whaley is charged with two additional counts of money laundering (Counts 18 & 19). Based upon the exhibits, Defendant Whaley was interviewed by government agents on November 30, 2010. The interviewing agent(s) created an FBI Form 302, summarizing the information from Defendant Whaley. This unredacted summary is the basis for Defendant Kerley's objection to a joint trial. Defendant Kerley does not object to the redacted version of the summary produced as Exhibit 1 to the motion hearing.

*(C) Analysis*

Rule 8(b) provides that two or more defendants may be charged

> in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). In the present case, the Court finds that the Defendants were properly joined in the same indictment because they are alleged to have participated in the same act or series of transactions, i.e., a conspiracy to commit wire and bank fraud over approximately nineteen months. See United States v. Smith, 197 F.3d 225, 230 (6th Cir. 1999) (observing that "[t]he general rule in conspiracy cases is that persons indicted together should be tried together"); see, e.g., United States v. Welch, 97 F.3d 142, 147-48 (6th Cir. 1996) (affirming denial of severance where defendant only named in three of twenty-nine counts stemming from a conspiracy to sell cocaine), cert. denied, 519 U.S. 1134 (1997). They are also alleged to have engaged in eight counts of wire fraud, eight counts of bank fraud, and a single count of money laundering together during this time frame. The general rule is that parties who are jointly indicted should be tried together. United States v. Davis, 809 F.2d

7

1194, 1207 (6th Cir. 1987); United States v. Dempsey, 733 F.2d 392, 398 (6th Cir. 1980). Joinder of defendants promotes judicial economy because there is almost always common evidence against the joined defendants. United States v. Phibbs, 999. F.2d 1053, 1067 (6th Cir. 1993). In the instant case, the Court finds that the Defendants, having been jointly indicted on conspiracy and other charges, have been properly joined.

Rule 14 permits severance of properly joined counts, if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14. Rule 14 expressly provides for the consideration of evidence beyond the mere face of the indictment in stating that "[b]efore ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence." Fed. R. Crim. P. 14.

In assessing the propriety of severance under Rule 14, the Court must balance the public's interest in avoiding multiple trials with the defendant's interest in a fair trial. United States v. Wirsing, 719 F.2d 859, 864-65 (6th Cir. 1983). As a general rule, severance should be granted only if a defendant can show "substantial," "undue," or "compelling" prejudice. United States v. Warner, 971 F.2d 1189, 1196 (6th Cir. 1992) (quoting tests from other Sixth Circuit cases). In light of the preference for joint trials, when joinder is proper under Rule 8, a court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

*(1) Defendant Kerley's Objection to Joint Trial*

Defendant Kerley moves [Doc. 30] the Court to sever his case for a separate trial from that of Codefendant Whaley or, alternatively, to refrain from introducing any part of Defendant Whaley's statement that relates to him. He argues that the introduction of Defendant Whaley's statement would violate his rights under the Confrontation Clause, if Defendant Whaley chooses not to testify at their joint trial. He asserts that his Sixth Amendment right to confrontation bars the introduction of an unredacted statement by either the Government *or* Defendant Whaley.

The Government responds [Doc. 56] that any potential confrontation problems can be avoided by redacting the portions of Defendant Whaley's statement that implicate Defendant Kerley. The Government attached a proposed redacted version of the statement to its response. In reply [Doc. 62], Defendant Kerley requested an additional redaction and stated that the witness testifying about Defendant Whaley's statement would also have to be instructed not to mention any portion of the statement referring to Defendant Kerley. At the motion hearing, the Government introduced a proposed redacted version of Defendant Whaley's statement [Exh. 1] that incorporated the additional redaction proposed by Defendant Kerley in his reply brief. Counsel for Defendant Kerley stated that Exhibit 1 was acceptable. Defendant Kerley continued to object to the agent testifying with regard to the portions of the statement that have been removed.

The Supreme Court has held that the admission of a codefendant's confession, which also inculpates the defendant, in their joint trial violates the confrontation right of the defendant even if the trial court gives a limiting instruction directing the jury to consider the confession only with respect to the confessing codefendant. Bruton v. United States, 391 U.S. 123, 127 (1968). In Richardson v. Marsh, 481 U.S. 200, 208 (1987), the Court limited Bruton by upholding the introduction of a codefendant's statement, which was not facially incriminating to the defendant,

even though the codefendant's statement became incriminating to the defendant when linked to other evidence presented at trial. The "Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211.

Accordingly, the Court finds that any potential prejudice to Defendant Kerley posed by the admission of a non-testifying codefendant's statement can be avoided by the appropriate redactions to remove any reference to Kerley. The Government has made such redactions in Exhibit 1 to the motion hearing, and Defendant Kerley is satisfied with those redactions. The Court also agrees with the redactions in Exhibit 1 to the motion hearing. This result does not entirely resolve the severance question, however, because Defendant Kerley also objects to Defendant Whaley introducing the portions of his statement referencing him (i.e., the redacted portions of the statement) without also testifying and, thereby, being subject to cross-examination. This facet of the severance issue is addressed in the next section.

*(2) Defendant Whaley's Objection to Joint Trial*

Defendant Whaley moves [Doc. 53] the Court to sever him for a separate trial from that of Defendant Kerley so that he can introduce his entire statement without treading upon Defendant Kerley's confrontation rights. Defendant Whaley argues that the portions of his statement referencing Defendant Kerley are exculpatory as to him. He contends that limiting him to the redacted statement at a joint trial would violate his rights under the Due Process Clause of the Fifth Amendment. He characterizes his position as a "reverse Bruton" argument and contends that the

10

only way to protect Defendant Kerley's Sixth Amendment rights and simultaneously to protect his Fifth Amendment rights is to sever them for separate trials. Additionally, he asserts that presenting the redacted statement at a joint trial would violate the evidentiary rule of completeness under Rule 106 of the Federal Rules of Evidence. He argues that the Government must prove that he executed the alleged scheme to defraud with the intent to defraud, but the unredacted statement shows that he relied on Defendant Kerley, who was his friend and an attorney, with regard to how to prepare the checks for the real estate transactions. Defendant Whaley argues that if the Government introduces his redacted statement through the interviewing agent, then he is entitled to introduce the remainder of the statement under the rule of completeness.

The Government responds [Doc. 56] that the rule of completeness would not permit Defendant Whaley to force the admission of the redacted portions of the statement in a joint trial, because Defendant Kerley's confrontation rights trump the evidentiary rule of completeness, unless the redaction distorts the meaning of the statement or the redacted portion of the statement is exculpatory. The Government contends that the excised portions of Defendant Whaley's statement do not exculpate Whaley and, in fact, are incriminating in that they tend to show that Defendants Kerley and Whaley were engaged in a conspiracy to defraud. Moreover, the Government asserts that the redaction of the statement does not prevent Defendant Whaley from presenting a defense that Defendant Kerley told him what to do. It maintains that Defendant Whaley can present this defense through the cross-examination of witnesses and/or through his own testimony, if he so chooses. Secondly, the Government argues that Defendant Whaley would be in no better position in a separate trial because the evidentiary rules excluding hearsay would prevent him from introducing his unredacted statement at a separate trial.

11

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. "The doctrine of completeness, partially codified in Federal Rule of Evidence 106, 'allows a party who is prejudiced by an opponent's introduction of part of a document, or a correspondence, or a conversation, to enter so much of the remainder as necessary to explain or rebut a misleading impression caused by the incomplete character of that evidence.'" United States v. Cosgrove, 637 F.3d 646, 661 (6th Cir. 2011) (quoting United States v. Howard, 216 F. App'x 463, 472–73 (6th Cir. 2007)). Nevertheless, the rule of completeness "'does not make inadmissible evidence admissible.'" Cosgrove, 637 F.3d at 661 (quoting Howard, 216 F. App'x at 472–73). For example, hearsay, even "[e]xculpatory hearsay[,] may not come in solely on the basis of completeness." United States v. Shaver, 89 F. App'x 529, 534 (6th Cir. 2004) (unpublished).

Defendant Whaley argues that if the Government introduces his statement at trial, fairness requires the jury to consider the redacted portion in which he states that he "depended on" his friend Kerley "because he was a lawyer." Although Defendant Kerley does not actually argue that the redacted version presents a misleading impression of his statement, the Court assumes that this is the gist of his fairness argument. Essentially, the redacted portion of Defendant Whaley's statement relates that Defendant Whaley worked with Defendant Kerley, who is a title attorney, to close real estate deals. The redacted portion reflects that Whaley "depended" on his friend Kerley "because he was a lawyer." Additionally, the redacted portion states that an employee of the title company told Whaley what names to list on the checks for the closings and that Kerley approved Whaley's making certain transactions at the bank. Arguably, the redacted version of the statement distorts

12

its meaning because it does not reflect Whaley's reliance on Kerley, who is a lawyer, although the statement still states that Defendant Whaley "thought the cabin real estate transactions were legal."

Nevertheless, Defendant Whaley has failed to show how he could introduce his statement either at a joint or a separate trial. Although the Government could seek to admit Defendant Whaley's statement as the admission of a party opponent under Rule 801(d)(2), Fed. R. Evid., Defendant Whaley could not admit his own statement under this rule. United States v. Henderson, 626 F.3d 326, 344 (6th Cir. 2010) (holding that although the government properly introduced portions of the defendant's recorded conversations under Rule 801(d)(2), the defendant could not "introduce his own out-of-court statements" pursuant to this hearsay exclusion, even in the interest of completeness); United States v. Holden, 557 F.3d 698, 706 (6th Cir. 2009) (holding that the defendant was "unable to avail himself of this exception [for admissions of party opponents] because he sought to introduce his own statement").

Additionally, Defendant Whaley cannot force the admission of the redacted portion of the statements pursuant to the rule of completeness through the cross-examination of the interviewing agent. Although Defendant Whaley characterizes his interest in presenting the redacted portions of his statement as a "'reverse Bruton' argument,"[3] the Confrontation Clause does not grant a defendant

---

[3]The Court notes that the case cited by Defendant Whaley, United States v. Gonzalez, does not recognize a "reverse Bruton" right. 749 F.2d 1329 (9th Cir. 1984). In Gonzalez, the defendant argued that the redaction of his codefendant's name from his statement created a "'reverse Bruton' problem" at trial, because he could not cross-examine the interviewing agent about his custodial statements that implicated the codefendant. Id. at 1334. The Ninth Circuit rejected this argument, holding that "[b]oth the rules and the rationale of Bruton are therefore inapplicable to this case, since there can be no confrontation problem when the challenged statements were made by the complaining defendant himself." Id. The court reasoned that the illogical result of recognizing a reverse Bruton right would be to exclude "all statements by one defendant inculpating a jointly-tried codefendant, because in order to admit such a statement a trial judge would either have to refuse to redact the statement and violate the inculpated

the "right to use cross-examination to try to prove his own case directly by eliciting new evidence that would not serve to undermine [the witness's] credibility." Shaver, 89 F. App'x at 533. Instead,

> [t]he purpose of the Confrontation Clause is to permit the accused to challenge witnesses' credibility–"a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 . . . (1986).

Id. Moreover, a "court does not offend the Confrontation Clause by refusing to admit hearsay as to which no hearsay exception applies." Id. In Shaver, the defendant, on trial for mail fraud, sought to cross-examine the postal inspector about statements he made in an earlier interview, in which the defendant had stated that he was following the instructions of his late mother in unwittingly participating in the fraudulent scheme. Id. at 531. The Sixth Circuit held that neither the rule of completeness, nor the Confrontation Clause, permitted the defendant to cross-examine the agent on the exculpatory statements that the defendant made in the interview because the exculpatory statements did not fall within any hearsay exception. Id. at 532-33. The Court finds the same to be true in the instant case.

Both the Second and the Eleventh Circuits have held that the existence of an exculpatory portion in an otherwise incriminating statement did not require the severance of codefendants for separate trials. United States v. Yousef, 327 F.3d 56, 153-4 (2d Cir. 2003); United States v. Range, 94 F.3d 614, 620-21 (11th Cir. 1996). In United States v. Yousef, Defendant Ismoil argued that pursuant to the rule of completeness, the trial court should have permitted him to introduce the fact that he named Codefendant Yousef in his statement as having contacted him and involved him in

---

defendant's confrontation rights under Bruton, or redact it and violate the 'reverse Bruton' rights of the defendant who made the statement." Id.

the plot to bomb the World Trade Center in 1993. 327 F.3d at 153-4. The Second Circuit observed that it must weigh the "competing interests" of Defendant Ismoil in presenting a complete statement, Defendant Yousef's confrontation rights under <u>Bruton</u>, and the interest in judicial economy furthered by a joint trial. <u>Id.</u> at 154. The court held that the redaction of Ismoil's statement did not distort the statement's meaning and reasonably accommodated the competing interests involved. <u>Id.</u> Moreover, the court also found that redaction of Ismoil's statement did not prevent Ismoil from presenting the defense that Yousef had "duped" him into participating in the bombing through evidence other than the statement. <u>Id.</u> at 152-53. Importantly, the court observed that Ismoil could not have introduced his complete statement at a separate trial because it would be hearsay and, thus, the introduction of the statement was not a reason to sever: "Absent a genuine entitlement to introduce the unredacted statement on his own at a severed trial (as distinct from an expectation that the Government would choose to introduce the entire, unredacted statement at a severed trial), Ismoil has offered no reason why the District Court's denial of the severance motion was an abuse of discretion." <u>Id.</u> at 153.

In <u>United States v. Range</u>, the defendant sought to cross-examine the agent on a redacted portion of the defendant's statement in which he had said that a codefendant had placed a gun and money in the car and had instructed him to drive to a restaurant. 94 F.3d at 620. Defendant Range argued that the fairness standard in the rule of completeness required the admission of the excluded portion of his statement. The court held that "[w]hen multiple defendants are involved and statements have been redacted to avoid <u>Bruton</u> problems, the 'rule of completeness' is 'violated only when the statement in its edited form . . . effectively distorts the meaning of the statement or excludes information substantially exculpatory of the nontestifying defendant.'" <u>Id.</u> at 621 (quoting

15

United States v. Lopez, 898 F.2d 1505, 1511 n.11 (11th Cir.1990)).  The court concluded that the redacted statement did not distort the meaning of the defendant's statement.  Id.

In the present case, Defendant Whaley frames the issue as a conflict of rights, in essence arguing that because presentation of the unredacted statement violates Defendant Kerley's confrontation rights and presentation of the redacted statement violates his right to present a defense, the Court must sever them for separate trials.  The Court finds that this is not the issue, however. The question is not whether Defendant Whaley can present the defense that he was acting pursuant to the legal advice of Defendant Kerley but whether he can bring the redacted portions of his statement before the jury.  As discussed above, the Court finds that he cannot introduce his unredacted statement, either in a joint or a separate trial, because it is inadmissible hearsay.  In light of this finding, the Court determines that the interests of the judicial economy of a joint trial and Defendant Kerley's Sixth Amendment right to confront the witnesses against him take precedence. Because Defendant Whaley cannot introduce his statement in a separate trial, Defendant Whaley has failed to show a "serious risk that a joint trial would compromise a specific trial right of [his], or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.

Based upon the foregoing, the Court concludes that the Defendants should remain joined for trial.  The Motion for Severance of Defendants [**Doc. 30**] is **GRANTED in part** in that the Court grants Defendant Kerley's alternative request that the Government may only introduce the redacted statement contained in Exhibit 1 to the motion hearing, unless Defendant Whaley chooses to testify. The motion is **DENIED in part** with respect to the request for a severance.  Although the Court has granted Defendant Whaley's Motion to Join Motion to Sever [Doc. 53], it denies the relief requested therein (i.e., severance).

16

## IV. PRETRIAL HEARING ON CONSPIRACY [Doc. 37]

The Defendants move [Doc. 37] the Court to require the Government to prove in a pretrial hearing the existence of the conspiracy or conspiracies before it attempts to introduce in its case-in-chief at trial the statements of conspirators pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. The Defendants contend that such a pretrial hearing is an acceptable method for the trial court to determine the existence of the conspiracy as required by Rule 801(d)(2)(E). See United States v. Vinson, 606 F.2d 149, 152-53 (6th Cir. 1979). Moreover, the Defendants argue a pretrial hearing is the preferable method in this case because (1) this case involves a number of complicated real estate transactions and could potentially involve a significant number of alleged coconspirator statements by persons unknown to the Defendants and (2) if the alleged coconspirator statements are admitted without a pretrial hearing and the Government is not able to prove the existence of the conspiracy, the admission of the hearsay statements will violate the Defendants' confrontation rights. The Defendants assert that the prejudice stemming from this violation of their Sixth Amendment rights likely cannot be assuaged by a curative instruction to the jury and will require the District Court to declare a mistrial.

The Government opposes [Doc. 55] the Defendants' request for a pretrial hearing on the existence of the conspiracy as unduly burdensome and a waste of judicial resources. It views the Defendants' request for a pretrial hearing as an effort to obtain discovery beyond that permitted by Rule 16 of the Federal Rules of Criminal Procedure. The Government asks the Court to follow the traditional practice in this district and to permit it to present the coconspirator statements subject to a later demonstration of their admissibility by a preponderance of the evidence. It argues that the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 50 (2004), has not altered the

efficacy of provisionally admitting coconspirator statements.

The Federal Rules of Evidence require that for a statement of a coconspirator to be admissible non-hearsay, the statement must be made "during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The Sixth Circuit has approved three potential procedures for resolving the admissibility of alleged coconspirator statements: (1) holding a pretrial hearing, (2) requiring at trial that the government present evidence of the conspiracy before presenting the coconspirator's statement, and (3) allowing the government to present the statement before proving the conspiracy at trial but instructing the jury that the government must prove the conspiracy before it can consider the statement. Vinson, 606 F.2d at 152-53 (citing United States v. Enright, 579 F.2d 980 (6th Cir. 1978)). The Defendants are seeking a pretrial hearing. The Court observes, and the parties agree, that it is the historical practice in this district to use the third of these options, which the Court will refer to as the provisional admission option. While acknowledging this historical practice, the Defendants argue that this case is exceptional because of the nature of the case (i.e., it involves multiple real estate transactions in which a number of unknown persons may have been involved) and the great potential that a mistrial will result, if the Court proceeds by the provisional admission option.

Our appellate court has observed that pretrial hearings to determine the existence of a conspiracy have the disadvantage of being "burdensome, time-consuming and uneconomic." Vinson, 606 F.2d at 152 (footnote omitted). Nevertheless, "a trial judge, in the exercise of his discretion, may choose to order the proof in this manner if the circumstances warrant." Id. The decision of which of the Vinson options to use falls squarely within the district judge's sound discretion. United States v. Robinson, 390 F.3d 853, 867 (6th Cir. 2004) (stating the decision is "the

trial court's prerogative").  District Judge Thomas W. Phillips, the district judge in this case, has declined to conduct a pretrial hearing on the existence of the conspiracy if the proponents of the hearing offer only "general and vague objections" that "demonstrate no specific prejudice" resulting from the use of the provisional admission option.  United States v. Martin, No. 3:07-CR-51, 2008 WL 152900, at *3 (E.D. Tenn. Jan. 14, 2008) (order adopting magistrate judge's denial of an Enright hearing).  The Government argues that the Defendants have failed to raise any specific prejudice arising from use of the provisional admission option in this case and, instead, raise general objections that apply in most cases.

The Defendants argue that the specific prejudice arising from the provisional admission option will be not only the contamination of the jury through exposure to inadmissible evidence, but also, and more importantly, a violation of their right to confrontation under the Sixth Amendment. The Defendants argue that the efficacy of the provisional admission approach is "significantly altered by the Supreme Court's decision in Crawford," because the erroneous admission of evidence not only fails to qualify as non-hearsay under Rule 801(d)(2)(E) but also constitutes an error of constitutional magnitude.  The Defendant's contend that for this reason, the error cannot be salved by a curative instruction to the jury and must necessarily result in a mistrial.  Thus, the Defendants argue that in the wake of Crawford, holding a pretrial hearing to determine the admissibility of coconspirator statements is "the more efficient practice, and the practice with the least potential for a confrontation problem to raise its head during the middle of a trial[.]" The Government contends that in the seven years since the Crawford decision, this Court has continued to use the provisional admission approach without difficulty, including in complex cases.

"In Crawford, the Supreme Court announced a new standard for assessing whether hearsay

statements, otherwise admissible under principles of evidence, violate the mandate of the Confrontation Clause." United States v. Mooneyham, 473 F.3d 280, 286 (6th Cir. 2007). With regard to "testimonial statements," which are those statements that the declarant should have anticipated would be used to investigate or prosecute a crime, United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004), only confrontation in the form of cross-examination will fulfill the defendant's Sixth Amendment right. Crawford, 541 U.S. at 68-69. Following Crawford, the Sixth Circuit continues to recognize that the admission of coconspirator statements does not violate the Confrontation Clause, because "a reasonable person in the position of a coconspirator making a statement in the course and furtherance of a conspiracy would not anticipate his statements being used against the accused in investigating and prosecuting the crime." United States v. Martinez, 430 F.3d 317, 329 (6th Cir. 2005). Thus, the Court declines to find that the Supreme Court's decision in Crawford has significantly altered the assessment of the efficiency and judiciousness of the provisional admission option.

Moreover, the Sixth Circuit has contemplated that a mistrial may be the ultimate result of the provisional admission of coconspirator statements: "If, [after provisionally admitting the statements at issue], the court finds that the government has failed to carry its burden [of proving all the elements of Rule 801(d)(2)(E)], it should, on defendant's motion, declare a mistrial unless convinced that a cautionary jury instruction would shield the defendant from prejudice." Vinson, 606 F.2d at 153. Thus, the fact that a mistrial could be the ultimate result is not a "prejudice" specific to these Defendants or this case but exists every time the provisional admission method is employed.

Finally, the Defendants argue that the nature of this case, involving allegedly fraudulent real

estate transactions, presents the potential for numerous alleged coconspirator statements. In essence, the Defendants are arguing the burdensomeness of litigating the admissibility of numerous coconspirator statements at trial tips the balance in favor of a pretrial hearing, making the pretrial hearing more efficient in this case. The Court finds the Defendants' predictions as to the increased number of coconspirator statements in this case to be speculative at this time. Accordingly, the Court finds that the Defendants have not shown that the provisional admission option will cause them some prejudice unique to this case. The Defendants are free to ask the District Judge, by way of a motion *in limine*, to consider alternative methods of handling coconspirator statements, such as the parties provision of trial briefs on the admissibility of coconspirator statements.

The Court has considered the Defendants' arguments and finds no reason to depart from the traditional provisional admission approach in this case. Because the Defendants' motion relates directly to trial procedures and/or the admissibility of evidence at trial, the Court defers to the historical practice of the District Court to permit the Government to present the statement before proving the conspiracy and then instructing the jury that the Government must prove the conspiracy before it can consider the statement. Accordingly, the Defendants' Motion for Hearing to Determine Existence of Conspiracy [**Doc. 37**] is **DENIED**.


### V.  JURY DETERMINATION OF FORFEITURE NEXUS [Doc. 39]

The Defendants ask [Doc. 39] the Court to order that, upon a guilty verdict, the Court retain the jury to determine whether the property the Government contends is subject to forfeiture should be so forfeited. The Government does not object [Doc. 54] to this request. Rule 32.2(b)(5)(A) of the Federal Rules of Criminal Procedure provides that

> [i]n any case tried before a jury, if the indictment . . . states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

In this case, both Defendants are making such a request. Part (B) of the Rule further states that

> [i]f a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

Fed. R. Crim. P. 32.2(b)(5)(B). Here, the Defendants have made a timely request to have the jury determine the question of forfeiture. Accordingly, because the Defendants have complied with the requirements of Rule 32.2(b)(5) and because the Government does not oppose the request, the Defendants' Motion for Jury Determination of Forfeiture Nexus [**Doc. 39**] is **GRANTED**. The Government is **ORDERED** to submit a proposed Special Verdict Form, in compliance with Rule 32.2(b)(5)(B), by the deadline set for requests for special jury instructions.


## VI. CONCLUSION

For the reasons discussed above, it is **ORDERED**:

> (1) The Defendants' Motion for Severance of Defendants [**Doc. 30**] is **GRANTED in part** in that the Court grants Defendant Kerley's alternative request that the Government may only introduce the redacted statement contained in Exhibit 1 to the motion hearing, unless Defendant Whaley chooses to testify. The motion is **DENIED in part** with respect to the request for a severance;

> (2) The Defendants' Motion for Hearing to Determine Existence of Conspiracy [**Doc. 37**] is **DENIED**;

> (3) The Defendants' Motion for Jury Determination of Forfeiture Nexus [**Doc. 39**] is **GRANTED**. The Government is **ORDERED** to

submit a proposed Special Verdict Form, in compliance with Rule 32.2(b)(5)(B), by the deadline set for requests for special jury instructions;

(4) Defendant Whaley's Motion to Adopt Motions of Co-defendant [**Doc. 52**] and Motion to Join Motion to Sever [**Doc. 53**] are **GRANTED** in that Defendant Kerley is permitted to join in these motions;

(5) The Government's Motion to Seal Exhibits to Government's Response to Defendant Kerley's Motion for Severance of Defendants (R. 30) [**Doc. 57**] is **GRANTED in part** in that Exhibit 1 is **SEALED** and **DENIED in part** in that Exhibit 2 is **UNSEALED**; and

(6) The United States' Motion to Correct Clerical Errors [**Doc. 68**] is **GRANTED**. The Government is **DIRECTED** to provide a corrected copy of the Fourth Superseding Indictment to the District Judge and the Defendants by the deadline established for filing special requests for jury instructions.

**IT IS SO ORDERED.**

ENTER:


    s/ C. Clifford Shirley, Jr.    
United States Magistrate Judge

23