IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 3:10-CR-169 |
| | ) | |
| | ) | (PHILLIPS/SHIRLEY) |
| JEFFREY WHALEY, and | ) | |
| JERRY D. KERLEY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.§

636(b) for disposition or report and recommendation regarding disposition by the District Court as

may be appropriate. This case is before the Court on the Defendants' Motion to Exclude Testimony

of Government's Disclosed Witnesses Kimberly Blankenship and Ronalda Owens [Doc. 75],[1] filed

on September 9, 2011. The Government filed a response [Doc. 77] on October 3, 2011, to which

the Defendants replied [Doc. 78] on October 11, 2011. The parties appeared for a hearing on the

motion on November 2, 2012. Assistant United States Attorney F.M. Hamilton, III, appeared on

behalf of the Government. Attorneys W. Thomas Dillard, Wade V. Davies, and Brian Wanamaker

represented Defendant Kerley, and Attorney Tracy Jackson Smith represented Defendant Jeffrey

Whaley. Both Defendants were also present. At the conclusion of the hearing, the Court took the

---

[1]The motion was originally filed by Defendant Kerley. On November 1, 2011, Defendant
Whaley moved [**Doc. 81**] to adopt the motion in order to promote judicial economy. The Court
**GRANTED** this request at the November 2, 2011 motion hearing.

1

matter under advisement.

# I. BACKGROUND

The Defendants are charged in a Fifth Superseding Indictment [Doc. 80] with conspiracy to commit wire fraud and bank fraud (Count 1), eight counts of wire fraud (Counts 2-9), eight counts of bank fraud (Counts 10-17), two counts of making a false statement to influence a financial institution (Counts 18-19), and one count of money laundering (Count 22). Defendant Whaley is charged with two additional counts of money laundering (Counts 20-21). The charges are based on an alleged plan by the Defendants to profit from the sale of eight properties in Sevier County, Tennessee. The Defendants are alleged to have obtained "straw borrowers," who agreed to purchase the properties and to apply for mortgage loans to get the funds to purchase the properties and who were told that they would not have to make a down payment or mortgage payment on the properties. The Indictment alleges that the Defendants made material false representations and omissions, including concealing that the down payments for the properties did not come from the straw borrowers, on loan documents to Citizens Bank and SunTrust Mortgage to induce these entities to lend mortgage proceeds to the straw borrowers. Citizens Bank, an FDIC insured bank, and SunTrust Mortgage, from its account at SunTrust Bank, an FDIC insured bank, wired mortgage proceeds to Guaranty Land Title, the closing agency owned by Defendant Kerley.

On August 5, 2011, the Government filed a Disclosure of Testimony of Kimberly Blankenship [Doc. 66] and a Disclosure of Testimony of Ronalda Owens [Doc. 67]. The disclosure relating to Ms. Blankenship, states that she is the First Vice President of Consumer Banking Operational Risk and the Compliance Manager for Quality Control Mortgage at SunTrust Mortgage

2

and will testify as a fact witness at trial. Although the disclosure states that Ms. Blankenship will not provide expert testimony, the Government contends that it is providing the disclosure by the deadline set for expert witnesses out of an abundance of caution. The disclosure relates Ms. Blankenship's professional experience and a summary of her anticipated testimony regarding whether SunTrust Mortgage would have approved the underwriting and funded certain loans for the eight properties involved in this case. The disclosure relating to Ms. Owens also states that she will testify as a fact witness, rather than an expert, at trial but that the Government likewise discloses her testimony out of an abundance of caution. Ms. Owens is the Senior Vice President of Lending at Citizens Bank. Ms. Owens' disclosure briefly summarizes her professional experience and summarizes her anticipated testimony on whether Citizens Bank would have approved and funded certain loans for two of the properties involved in this case.

## II. POSITIONS OF THE PARTIES

The Defendants argue that the proposed testimony of Ms. Blankenship and Ms. Owens does not qualify as proper lay witness opinion under Rule 701 of the Federal Rules of Evidence. They argue that (1) neither witness was involved in approving the loans in question and, thus, cannot testify about her own perceptions, (2) both witnesses will testify to after-the-fact investigations of the loans, and (3) the proposed testimony is based upon the witnesses' specialized knowledge. Alternatively, the Defendants contend that the proposed testimony does not meet the requirements for expert testimony under Federal Rule of Evidence 702 and that the expert testimony of Ms. Blankenship and Ms. Owens is inadmissible because the disclosures provided by the Government are insufficient to comply with Rule 16(a)(1)(G), of the Federal Rules of Criminal Procedure.

3

Finally, the Defendants argue that the Court should conduct an evidentiary hearing to determine what testimony by Ms. Blankenship and Ms. Owens, if any, is admissible under Rules 701 and 702.

The Government responds that the proposed testimony of Ms. Blankenship and Ms. Owens properly qualifies as lay witness opinion under Rule 701. The Government contends that Ms. Blankenship and Ms. Owens are employees of their respective banks testifying about their investigation of the impact of material misrepresentations in loan documents on their employers' business. Accordingly, the Government asserts that Ms. Blankenship and Ms. Owens will testify to fact or admissible lay opinion. The Government also argues that if Ms. Blankenship and Ms. Owens are deemed to be experts under Rule 702, then it has made the proper expert disclosures. Finally, the Government contends that if the Court finds its expert disclosures to be insufficient, the remedy is to order it to supplement its disclosures, rather than to deny admission of the testimony.

## III. ANALYSIS

The Defendants challenge the admissibility of the testimony of two Government witnesses, contending that the proposed testimony does not qualify as lay opinion under Rule 701. They also argue that the proposed testimony does not qualify as expert opinion under Rule 702 and that, even if the testimony can properly be characterized as expert opinion, it has not been properly disclosed. As a result, the Defendants ask the Court to exclude the testimony of Ms. Blankenship and Ms. Owens at trial. After examining the arguments and the case law, the Court finds that Ms. Blankenship and Ms. Owens may testify to the facts surrounding their investigation of the approval of the loans at issue in this case and to their lay opinion, resulting from their investigation and their knowledge of their employers' lending policies, as to whether their employer banks would have

4

approved the loans if the true nature of the down payments had been known. Because the Court

finds that their testimony is admissible under Rule 701, there is no need to determine whether Ms.

Blankenship's and Ms. Owens' testimony is also admissible under Rule 702 or whether it has been

properly disclosed.

As a general matter, a lay or fact witness may not testify about his or her opinion, except in

specific circumstances:

> If a witness is not testifying as an expert, testimony in the form of an
> opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to
> determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge
> within the scope of Rule 702.

Fed. R. Evid. 701.[2]  As the advisory committee's notes to the 2000 amendments to Rule 701 point

---

[2]This version of Rule 701 became effective on December 1, 2011, after the filing of the
Motion to Exclude and the November 11 motion hearing. The prior version of Rule 701 read as
follows:

> If the witness is not testifying as an expert, the witness' testimony
> in the form of opinions or inferences is limited to those opinions or
> inferences which are (a) rationally based on the perception of the
> witness, (b) helpful to a clear understanding of the witness'
> testimony or the determination of a fact in issue, and (c) not based
> on scientific, technical, or other specialized knowledge within the
> scope of Rule 702.

The advisory committee's notes on the 2011 amendments state:

> The language of Rule 701 has been amended as part of the general
> restyling of the Evidence Rules to make them more easily
> understood and to make style and terminology consistent
> throughout the rules. These changes are intended to be stylistic

out, the intent of the amendments to the rule is to prevent a party from surprising his or her opponent by eliciting expert testimony from a witness without complying with Rule 702's requirements for expert testimony or the disclosure requirements of the procedural rules. The committee notes emphasize that the distinction is "between expert and lay *testimony*," rather than the type of witness, and that a single witness can provide both lay opinion testimony and expert opinion testimony in the same case. Thus, the committee notes establish that the amendments to Rule 701 are intended to give effect to Rule 702, and

> are not intended to affect the "prototypical example[s] of of the type of evidence contemplated by the adoption of Rule 701 relat[ing] to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." <u>Asplundh Mfg. Div. v. Benton Harbor Eng'g</u>, 57 F.3d 1190, 1196 (3d Cir. 1995).

Rule 701 advisory committee's note.

The Defendants argue that Ms. Blankenship's and Ms. Owens' disclosed testimony violates Rule 701(a), requiring that the opinion be "rationally based on the witness's perception," and (c),

---

> only. There is no intent to change any result in any ruling on evidence admissibility.
>
> The Committee deleted all reference to an "inference" on the grounds that the deletion made the Rule flow better and easier to read, and because any "inference" is covered by the broader term "opinion." Courts have not made substantive decisions on the basis of any distinction between an opinion and an inference. No change in current practice is intended.

At the November 11 hearing, the parties agreed that the new version of Rule 701 had the same important language as the previous version. Accordingly, the Court finds that the revision to Rule 701 does not affect the Court's analysis or ruling.

6

preventing lay opinion testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." They contend that the disclosed testimony is not based upon Ms. Blankenship's or Ms. Owens' personal perceptions of what occurred because neither of these witnesses were involved with approving the loans in question.[3] Instead, the Defendants argue that these witnesses' opinions are based upon their after-the-fact investigation into the events at issue. They also assert that the disclosed testimony is based upon Ms. Blankenship's and Ms. Owens' technical and specialized knowledge with regard to their employer banks' policies.

The Government argues that the testimony of Ms. Blankenship and Ms. Owens regarding the materiality of the misrepresentations on the loan documents is admissible as lay witness opinion because this testimony is not based upon experience, training, or specialized knowledge *within the realm of an expert* but, instead, is based upon the witnesses' investigation and their particularized knowledge gained by virtue of their positions with the banks. The Government points to an example provided in the advisory committee's notes to the 2000 amendments:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. See, e.g., Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

---

[3] The Government states that Ms. Owens had some direct involvement with the loan for 1230 Bird Nest Way, as indicated by a fax from Guaranty Land Title with regard to this property bearing her name. It also states that Ms. Owens supervised the Citizens Bank department directing loan transactions at the time that the two loans from Citizens Bank in this case closed.

7

Fed. R. Evid. 701 advisory committee's note. The Government states that Ms. Owens' "testimony about the operation of Citizens' Bank will be based exclusively on the particularized knowledge she has by virtue of her training and experience with Citizens Bank, her personal consideration of the alleged misrepresentations at issue, and the relevant Citizens Bank loan file, including the file's closing instructions." [Doc. 77, p.6] With regard to Ms. Blankenship, the Government argues that "by virtue of her various positions at SunTrust Mortgage, [she] has the particularized knowledge necessary to identify and apply [SunTrust Mortgage's] relevant underwriting and funding guidelines and then state whether the fraudulent scheme's misrepresentations were capable of influencing, or had a natural tendency to influence, SunTrust Mortgage's underwriting and funding decisions for the loans at issue." [Doc. 77, p.9] The Government argues that testimony related to the operation of a business by an employee, which is based on the employee's personal perceptions informed by particularized knowledge gained as a result of the employee's position, is lay, not expert, opinion.

The Sixth Circuit has permitted an investor and member of the board of directors of a company to testify about the company's value and projected value without first qualifying as an expert. Lativafter Liquidating Trust v. Clear Channel Communications, Inc., 345 F. App'x 46, 51 (6th Cir. 2009) (unpub'd).[4] Quoting the above example from the advisory committee's notes regarding a business owner or officer, the appellate court reasoned that "[a]s an investor who researched [the plaintiff company's] financial condition, and later as a member of [the company's] board, Vanderhoofven had personal, particularized knowledge of [the company's] value." Id. The court also found that the witness's "testimony rested on a sufficient foundation – his personal

_____

[4]The parties abbreviate the style of this case as Clear Channel in their briefs and oral argument. The Court will also use this abbreviation.

research into [the company's] financial reports." Id. Accordingly, the Sixth Circuit affirmed District Judge Phillips' determination that the witness could provide lay opinion testimony.

Based upon Clear Channel and the case law interpreting the owner/officer example from the advisory committee's notes, the Government contends that owners, officers, or *employees* of a business may provide lay opinion testimony regarding the effect of a course of conduct on the business, if that opinion is based upon particularized knowledge gained as a result of employment in the business. The Defendants argue that the "exception" advocated by the Government would swallow Rule 701. They dispute the applicability of Clear Channel to the instant case, contending that Ms. Blankenship and Ms. Owens are not owners or officers of their respective banks and that their proposed testimony is not about the value of the banks or the banks' finances. Instead, the Defendants contend that Ms. Blankenship and Ms. Owens will testify about their after-the-fact investigation, rather than their personal perceptions of the approval of the loans in question. Secondly, the Defendants argue that Ms. Blankenship's and Ms. Owen's testimony is based upon their technical or specialized knowledge, rather than on reasoning familiar to the average person.

The Defendants rely on JGR, Inc. v. Thomasville Furniture Industries, Inc., to argue that the example from the advisory committee notes is limited to owners or officers. 370 F.3d 519, 525 (6th Cir. 2004). In JGR, an accountant and lawyer was permitted to testify about JGR's lost profits and business value due to the defendant's breach of contract, without the witness qualifying as an expert. Id. at 524. The witness had never worked for JGR before being hired to determine what the business's financial statement would have been if the defendant had complied with the contract. Id. at 524 n.3. The Sixth Circuit held that this testimony did not fall within the owner/officer lay opinion example from the committee notes because the witness had "never been an owner, officer

9

or director of JGR" and because the information upon which he based his opinion was not from his personal perceptions. Id. at 526. The court likened the case before it to DIJO, Inc. v. Hilton Hotels Corp., quoting the following from that case:

> It is telling that DIJO responds . . . not with evidence of [the witness]'s involvement with [the plaintiff] or the Project, but only emphasizing [his] substantial business experience . . . Such generic industry experience does not pass Rule 701 scrutiny. [The plaintiff] never attempted to qualify [the witness] as an expert; and a lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits. The further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701.

Id. at 525-26 (alterations in original) (quoting DIJO, 351 F.3d 679, 686 (5th Cir. 2003)). Based upon the analysis in JGR, the Court concludes that Sixth Circuit's ruling turned upon the fact that the witness had never actually worked for JGR–that he had no position with the company and therefore no personal perceptions based on the daily operations of the business– rather than the fact that he did not hold a specific position in the company. The Sixth Circuit confirmed this construction in United States v. White:

> In JGR, Inc. v. Thomasville Furniture Industries, Inc., 370 F.3d 519, 524 (6th Cir.2004), a case similar to Cedar Shipping, we reviewed a district court's decision to admit under Rule 701 the testimony of a certified public accountant and lawyer on the loss of profits and business value incurred by the plaintiff following the defendant's alleged breach of contract. Although the challenged witness rendered accounting services to the plaintiff company, he had no ownership stake in the company, nor did he serve as an officer or director. Id. at 526. Because the witness relied solely on information provided by the plaintiff company to calculate projected loss, we concluded that he lacked the basis necessary to offer such lay testimony. Id. JGR, Inc. thus turned on the witness's lack of personal perception.

10

492 F.3d 380, 403 n.10 (6th Cir. 2007) (emphasis added).

Our sister circuits have not limited the application of the example from the advisory committee's notes to only actual owners or officers of a business. See United States v. Hill, 643 F.3d 807, 841-42 (11th Cir. 2011) (permitting bank employees to testify about what the bank would have done had the empolyees known that representations in loan applications were false); United States v. Rigas, 490 F.3d 208, 223-25 (2d Cir. 2007) (holding that employee providing accounting services and financial analysis to business could properly provide lay opinion); Bank of China v. NBM LLC, et al, 359 F.3d 171, 180-82 (2d Cir. 2004) (holding that bank employee could testify about his investigation into fraud by defendants); Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003). The Eleventh Circuit, in a case relied upon by the Sixth Circuit in Clear Channel, 345 F. App'x at 51, has affirmed the admission of lay-opinion testimony by employees of a company testifying about the reasonableness of prices and time needed for repairs to a ship. Cedar Shipping, 320 F.3d at 1223. In this case, the defendant owner of the ship objected to testimony from three employees (one project manager and two consultants) and the president of the plaintiff repair company. Id. at 1218-20. The court analyzed the changes to Rule 701 in the 2000 amendments, examined the commentary including the business owner/officer example, and reviewed the history of the amendment. Id. at 1221-23. The court concluded that

> We have considered both pre-amendment and post-amendment cases and have determined that the testimony offered by Tampa Bay's employees and/or officers was of a type traditionally and properly considered lay witness testimony, as it was not based on specialized knowledge subject to Rule 702. . . . .
>
> . . . Tampa Bay's witnesses testified based upon their particularized knowledge garnered from years of experience within the field.

11

Id. at 1223.  Thus, the Eleventh Circuit did not limit lay opinion testimony only to owners or officers of a business and did not limit the scope of the lay opinion only to testimony on the value of the business.

The Eleventh Circuit recently applied its ruling in Cedar Shipping in a case strikingly similar to the one at hand.  See Hill, 643 F.3d at 841-42.  In Hill, the defendants were convicted of bank fraud, false credit applications, wire fraud, mail fraud, and money laundering, based upon a scheme in which they sold properties to straw buyers for inflated prices, using mortgages gained by misrepresenting to the lenders the true buyers, the source of the down payments, and the value of the properties.  Id. at 820.  The trial judge allowed bank employees "involved in mortgage and loan approval . . . to testify about whether the disclosure of misrepresentations in some of the fraudulent loan applications would have had any effect on their decision to approve the mortgage or loan."  Id. at 841.  The defendants objected because these witnesses were not qualified as experts.  Id.  The appellate court held that the bank employees' testimony was admissible under Rule 701 and the owner/officer example from the advisory committee notes because the employees testified "based on particularized knowledge gained from their own personal experiences."  Id. at 841; see also United States v. Munoz-Franco, 487 F.3d 25, 36 (1st Cir. 2007) (affirming lay opinion testimony of savings and loan institution's chief lending officer that riskiness of loans was improperly classified based upon the witness's "banking experience and his particular knowledge about" the loans in question).

Likewise, the Second Circuit has determined that employees of a company can provide lay opinion based upon the knowledge they have gained from their experience with the company.  In a case quite similar to the instant case, a bank sued both corporations and individuals for contract and

RICO violations designed to defraud the bank of loan proceeds. Bank of China, 359 F.3d at 174.

The bank sought to have Huang Yangxin, an employee, testify "(1) that certain transactions between

defendants . . . did not comport with the business community's understanding of normal, true, trade

transactions between a buyer and seller; (2) the concept of a "trust receipt," and how it works in the

context of an international commercial transaction; and (3) that it is considered fraud when an

importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods

involved." Id. at 180. The appellate court found that the portions of Huang's testimony that were

based upon his own investigation into the transactions at issue were admissible as lay opinion:

> Testimony admitted pursuant to Rule 701 must be "rationally
> based on the perception of the witness." Fed. R. Evid. 701(a). To
> some extent, Huang's testimony was based on his perceptions. As a
> Bank of China employee, Huang was assigned to investigate
> defendants' activities at the tail-end of their scheme and after Bank
> of China stopped doing business with them. Huang's senior role at
> the Bank and his years of experience in international banking made
> him particularly well-suited to undertake such an investigation and
> was likely a factor in the Bank's decision to assign the task to him.
> The fact that Huang has specialized knowledge, or that he carried out
> the investigation because of that knowledge, does not preclude him
> from testifying pursuant to Rule 701, so long as the testimony was
> based on the investigation and reflected his investigatory findings and
> conclusions, and was not rooted exclusively in his expertise in
> international banking. "Such opinion testimony is admitted not
> because of experience, training or specialized knowledge within the
> realm of an expert, but because of the particularized knowledge that
> the witness has by virtue of his [] position in the business." Fed. R.
> Evid. 701 advisory committee's note. Thus, to the extent Huang's
> testimony was grounded in the investigation he undertook in his role
> as a Bank of China employee, it was admissible pursuant to Rule 701
> of the Federal Rules of Evidence because it was based on his
> perceptions.

Id. at 181. On the other hand, the court did not permit Huang to testify to matters beyond his

investigation, because such testimony was a product of specialized knowledge and subject to the

13

requirements of Rule 702. Id. at 182. "Thus, Huang's explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted." Id.

The Defendants argue that the above quoted analysis in Bank of China reveals that only testimony about the finding from an investigation can constitute lay opinion, not any testimony extrapolating from the findings of the investigation. Thus, they assert that Ms. Blankenship and Ms. Owens must limit their testimony to what loan documents were given to their employers, which does not require any specialized knowledge other than knowing what to look for and where to find it within their respective organizations. The Defendants argue that Ms. Blankenship and Ms. Owens may not testify about how a change in the loan documents would have effected the lending process, which would involve an application of specialized knowledge. The Court finds that the Defendants are confusing fact with lay opinion. Ms. Blankenship and Ms. Owens seek to testify to their review of the pertinent loan documents in this case in light of the policies and underwriting practices of their respective banks. The particular lending practices and policies of the banks and what loan documents were submitted by the Defendants are matters of fact, not opinion. Ms. Blankenship and Ms. Owens' proposed testimony on whether the banks would have entered into those same loans, if the misrepresentations had not been made, are similar to the "investigatory conclusions" approved as lay opinion by the Second Circuit in Bank of China.

In Hill, the defendants also objected to testimony by bank employees about whether the loans would have been approved had the employees known that statements in the loan documents were false. 643 F.3d at 841. The defendants asserted that the ability to testify about these types of hypothetical questions was "the hallmark of an expert witness[.]" Id. The Eleventh Circuit

14

disagreed:

> Most of the lay witnesses who answered hypothetical questions in this case did not do so based on any "scientific, technical or other specialized knowledge," but instead based their testimony on their personal experiences as officers of financial institutions with knowledge of their companies' policies and of the specific transactions at issue. Besides, it does not take any specialized or technical knowledge to realize that lending institutions would be reluctant to approve a loan application if they knew that it contained false statements about material facts. Because of that, there is little or no danger that lay witness testimony was used to evade the reliability requirements of Rule 702.

Id. at 842. Thus, the court distinguished between knowledge gained through ones employment experience and the specialized knowledge characteristic of an expert.

This distinction is also clarified by the Second Circuit's subsequent examination of lay opinion testimony in the Rigas case. 490 F.3d at 223-25. The defendants, officers and owners of Adelphia Communications Company, were charged with conspiracy to commit securities fraud and other fraud-related crimes, including bank fraud. Id. at 211. After they were indicted, the defendants hired Robert DiBella to review the company's debt and assist in the correction of the financial statements. Id. at 223. At trial, the government presented DiBella as a fact witness, to testify about Adelphia's accounting records. Id. DiBella testified about the defendants' practice of "reclassifying debt" of Adelphia to other Rigas family businesses and stated that "Adelphia's net related-party receivable balance would have been $2.8 billion higher without the debt reclassifications, for a total of around $3.2 billion." Id. The defendants argued that "DiBella gave expert opinion testimony about what Adelphia's books should have shown." Id. Relying on Bank of China, the Second Circuit held that

> [a] witness's specialized knowledge, or the fact that he was chosen to

15

> carry out an investigation because of this knowledge, does not render his testimony "expert" as long as it was based on his "investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise[.]" . . . . If, however, the witness's testimony was "not a product of his investigation, but rather reflected [his] specialized knowledge," then it was impermissible expert testimony.

Id. at 224 (quoting Bank of China, 359 F.3d at 181-82).  The court concluded that DiBella was properly allowed "to testify under Rule 701 about the effects of the disputed reclassifications."  Id.

> First, DiBella's testimony was based upon his *observations* during his twenty months as an Adelphia employee.  Fed. R. Evid. 701(a).  DiBella was responsible for correcting Adelphia's financial statements and was well-acquainted with the records of Adelphia and the [other Rigas family businesses].  While Defendants argue that DiBella's opinion was based on what Adelphia's records should have shown, DiBella's testimony was based upon Adelphia's and the [other businesses'] records, and addressed the aggregate of what the [other businesses] *would* actually owe Adelphia if the debt reclassifications, which Brown and others testified were fraudulent, had not occurred.

Id. (emphasis added).  Thus, DiBella was permitted to give lay opinion testimony about what the debt would have been in the absence of the fraud.  In the instant case, the Government also seeks to present the lay opinion testimony of bank employees about their observations during their investigation into misrepresentations on loan documents and about whether the bank would have made the loans in the absence of the fraud.

The Defendants argue that the existence of an "after-the-fact" investigation is an "important signal" that the testimony is expert opinion based upon specialized knowledge, rather than lay opinion based upon personal perceptions.  To the contrary, the fact that the witness providing lay opinion testimony conducted an investigation of the circumstances or data leading to the opinion

16

"after-the-fact" does not mean that the opinion was not based upon the witness's personal perceptions. Both Bank of China and Rigas involved after-the-fact investigations by the employee witness. Rigas, 490 F.3d at 223; Bank of China, 359 F.3d at 181 (observing that "Huang was assigned to investigate defendants' activities at the tail-end of their scheme and after Bank of China stopped doing business with them"). In Rigas, the expert was not employed at the business at the time of the debt reclassifications that he later investigated. 490 F.3d at 223. In a recent case, the Fifth Circuit has held that a former employee could provide a lay opinion: "Because Labhart's knowledge and analysis were derived from duties he held at Dynegy, his opinions were admissible [under Rule 701] as testimony based upon personal knowledge and experience gained while employed by Dynegy." United States v. Valencia, 600 F.3d 389, 416 (5th Cir. 2010) (affirming testimony of former Dynegy risk officer, who "recreated much of the analysis he regularly performed when evaluating risk tolerances," as that of a "fact or lay opinion witness"); see also Munoz-Franco, 487 F.3d at 36 (permitting senior vice president of financial institution's mortgage department to testify about information the board needed to make decisions about whether to fund loans, due to witness's position and "familiarity with [the bank's] business operations," even though witness was not present for all the board meetings relating to the loans in question). Thus, in the present case, the fact that Ms. Blankenship and Ms. Owens examined the loan documents in question years after the loans were made and the fact that Ms. Blankenship did not work for SunTrust Mortgage at the time of the loans in question does not preclude them from providing lay opinion testimony.

The reason that an after-the-fact investigation is suspect is that it can be linked with the use of technical or specialized knowledge. The Sixth Circuit has observed that "[e]ven before the [2000] amendment[ to Rule 701], witnesses who performed after-the-fact investigations were generally not

allowed to apply specialized knowledge in giving lay testimony." United States v. Ganier, 468 F.3d

920, 927 (6th Cir. 2006). Thus, in Ganier, a computer analyst's testimony regarding the results of

forensic software was not lay opinion under Rule 701 because his testimony involved the application

of specialized knowledge. Id. at 926-27. However, the fact that the witness, by virtue of his or her

experience in a business, has knowledge not possessed by the average person does not render the

witness's opinion an expert opinion. Instead, one who works in a business may base lay opinion

testimony upon his or her "particularized knowledge that the witness has by virtue of his or her

position in the business." Fed. R. Evid. 701 advisory committee's note. Accordingly, an employee's

testimony does not stray into expert opinion as long as he or she is testifying about his or her

investigation and conclusions therefrom. Rigas, 490 F.3d at 224 (holding that DiBella properly

testified about how the reclassifications affected the amount of the debt and steered clear of

testimony as to whether reclassification was an appropriate accounting technique); Bank of China,

359 F.3d at 181 (reasoning that the "fact that Huang has specialized knowledge, or that he carried

out the investigation because of that knowledge, does not preclude him from testifying pursuant to

Rule 701, so long as the testimony was based on the investigation and reflected his investigatory

findings and conclusions, and was not rooted exclusively in international banking").

Finally, in the instant case, the Defendants contend that the focus of the Court's analysis must

be on the reasoning process applied by the witness in reaching the opinion to which he or she seeks

to testify. The advisory committee notes to the 2000 amendment to Rule 701 state that "the

distinction between lay and expert witness testimony is that lay testimony 'results from a process of

reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning that

can be mastered only by a specialist in the field.'" Fed. R. Evid. 701 advisory committee's note

(quoting State v. Brown, 836 S.W.2d 530, 549 (1992)). The Sixth Circuit relied upon the applicable

reasoning process in permitting some testimony by Medicare auditors and excluding other testimony.

White, 492 F.3d at 399-404. In White, the defendants were indicted for Medicare fraud and wire

fraud. Id. at 387. The government presented the testimony of four Medicare auditors, without

qualifying them as experts. Id. at 399. The appellate court held that the auditors properly testified

as lay witnesses with regard to that portion of their testimony that was based upon "their personal

knowledge of facts relevant to the case–whether from their role auditing cost reports submitted by

the Defendants, or from their personal interactions with the Defendants." Id. at 403. "[T]he bulk

of the [auditors'] testimony properly constitutes lay testimony since they discussed the facts as they

personally perceived them while auditing the Medicare cost reports submitted by Defendants on

behalf of the providers." Id. at 405.

On the other hand, the court in White ruled that portions of the auditors' testimony were

improper:

> [The auditors] relied to a significant degree on specialized knowledge
> acquired over years of experience as Medicare auditors in testifying
> to the structure and procedures inherent in the Medicare program, as
> well as their understanding of various terms. An average lay person
> would be incapable of making sense of the various exhibits which the
> [auditors] helped to clarify and link together on the basis of the
> "reasoning process" employed daily in their highly specialized jobs.

Id. at 403-04 (citations omitted). The Court finds this distinction to be like that made by the Second

Circuit in Bank of China, when it held that the witness could properly provide lay testimony about

his investigation and his investigatory conclusions, but he could not testify under Rule 701 about the

typical international banking transaction or the definitions of banking terms. Bank of China, 359

F.3d at 181-82. In other words, the fact that an employee is speaking from his or her experience

19

within a business does not immunize his or her testimony when it reaches beyond the witnesses' personal perceptions.

In the instant case, the Court finds that the proposed testimony by Ms. Blankenship and Ms. Owens is lay opinion testimony. First, it is rationally based upon the witnesses' personal perceptions from their review of the loan documents in light of their experience with the lending practices and guidelines of their respective employer banks. <u>See</u> Fed. R. Evid. 701(a). Second, their proposed testimony is helpful to the determination of a fact at issue, whether the Defendants made *material* misrepresentations on the loan documents. <u>See</u> Fed. R. Evid. 701(b). Third, the Court finds that Ms. Blankenship's and Ms. Owens' testimony is "not based upon scientific, technical, or other specialized knowledge *within the scope of Rule 702*," but is instead based upon their own "particularized knowledge," i.e., their familiarity with the underwriting process and lending policies at their banks, that they have due to their employment at their respective banks. Rule 701(c) & advisory committee's notes (emphasis added). Accordingly, the Court finds that the proposed testimony of Ms. Blankenship and Ms. Owens is admissible under Rule 701.

Because Ms. Blankenship's and Ms. Owens' testimony is properly admissible as fact or as lay opinion under Rule 701, the Government was not required to disclose a summary of their testimony under Rule 16(a)(1)(G), of the Federal Rules of Criminal Procedure, and the Court does not have to determine whether the proposed testimony would also qualify as expert opinion under Rule 702. Additionally, the Court does not deem there to be a need for an evidentiary hearing to parse the witnesses' testimony. If the Defendants believe that Ms. Blankenship or Ms. Owens are straying from the testimony approved by the Court herein, they may lodge an objection to testimony they believe exceeds the scope of this Memorandum and Opinion at trial.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the proposed testimony of Government witnesses Kimberly Blankenship and Ronalda Owens qualifies as lay opinion under Rule 701. Accordingly, the Defendants' Motion to Exclude Testimony of Government's Disclosed Witnesses Kimberly Blankenship and Ronalda Owens [**Doc. 75**] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

___s/ C. Clifford Shirley, Jr.___
United States Magistrate Judge